IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ORBITAL ENGINEERING, INC., | )<br>)   Civil Action No.  2:20-cv-593<br>)<br>)<br>)   Hon. Patricia L. Dodge<br>)<br>)<br>)<br>) |
| Plaintiff, | |
| v. | |
| JEFFREY J. BUCHKO, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF ORBITAL'S MOTION TO STRIKE CERTAIN PORTIONS OF JEFFREY BUCHKO'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS; MOTION FOR PRELIMINARY INJUNCTION; AND BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Orbital Engineering, Inc. ("Orbital"), by and through its attorneys, Dentons Cohen & Grigsby, P.C., hereby files the following Memorandum of Law in Support of its Motion to Strike Certain Portions of Jeffrey Buchko's Answer, Affirmative Defenses, and Counterclaims; Motion for Preliminary Injunction; and Brief in Support of Motion for Preliminary Injunction, pursuant to Fed. R. Civ. P. 12(f) and this Court's inherent powers to control its docket.

### I.   INTRODUCTION

In this Motion, Orbital seeks an Order striking certain allegations made by Buchko in his counterclaims, which are also repeated *verbatim* in his preliminary injunction motion and supporting brief filed on the same date.  The allegations at issue are (i) a reference to Orbital's Chief Executive Officer ("CEO") (a non-party in this case) as a "male chauvinist pig" who purportedly "fueled" a "pervasive environment of sexual harassment and discrimination" and "resulted in no less than seven (7) federal lawsuits by employees"; and (ii) an allegation that, as a result of the CEO's "declining capacity," "the financial records of Orbital . . . suffered substantial financial losses and corresponding expense related to embezzlement by the company

Controller." (Countercl. ¶¶ 30-31 (ECF 4) (the "Improper Allegations").) Each of the allegations on its face references the time period between 2014 and 2016. (*Id.*)

The Improper Allegations have nothing to do whatsoever with the present dispute. This case concerns Orbital's termination of Buchko in March of 2020 on the grounds that he engaged in gross negligence and willful misconduct, Buchko's post-employment contractual obligations not to compete with Orbital, and Buchko's claims that he is entitled to certain severance compensation pursuant to his employment agreement with Orbital. As Buchko knows full well, no aspect of Orbital's decision to terminate him – and no aspect of his affirmative claims against Orbital – relates in any manner to the events referenced in the Improper Allegations, nor do they even relate to the time period at issue in this case.

Buchko's aforementioned allegations are nothing more than disgraceful *ad hominem* attacks, lodged solely to disparage, embarrass and denigrate his former employer and its CEO. Indeed, the company's CEO – i.e., the primary target of Buchko's gratuitous invectives – is not even a party to this lawsuit. The Improper Allegations are exactly the type of allegations that Rule 12(f) is intended to address. Accordingly, the Court should enter an order striking those allegations from Buchko's counterclaim. Further, the Court should strike those same allegations from Buchko's preliminary injunction motion and brief, which were filed on the same date.

## II.   FACTUAL BACKGROUND

On March 2, 2020, Orbital notified Buchko that Buchko was terminated from his position at Orbital due to Buchko's willful misconduct and gross negligence. (Pl.'s Compl. ¶¶ 15-16 (ECF 1).) Orbital further informed Buchko that, as a result of his willful misconduct and in accordance with his Confidentiality and Non-Competition Agreement (the "Non-Compete Agreement"), Buchko (1) was not eligible to receive six months of severance pay or healthcare

benefits; and (2) remained subject to the twenty-four month non-competition and non-solicitation provisions contained in Section 2 of the Non-Compete Agreement.  (*Id.* ¶ 16.)

Buchko responded, through counsel, on March 26, 2020, threatening legal action and demanding payment (within ten days) equal to six months of Buchko's salary, bonus, six months of healthcare coverage and other compensation purportedly owed to Buchko.  (*Id.* ¶ 17.)  In that same letter, Buchko further informed Orbital that, absent such a payment, Buchko had no intention of complying with his post-employment non-compete and non-solicitation obligations to be enforceable.

On April 23, 2020, Orbital filed its complaint in this Court seeking declaratory relief with respect to the parties' dispute concerning Buchko's demand for compensation as well as his contractual post-employment non-competition and non-solicitation obligations, and asserting a claim for damages stemming from Buchko's repudiation of his post-employment contractual obligations.  (*Id.* ¶¶ 22-34.)   On June 1, 2020, Buchko filed his answer and counterclaims, a preliminary injunction, and a supporting brief.  (*See* ECF 4, 7-8.)  In each of those three filings, Buchko sets forth several allegations that are immaterial, impertinent and scandalous (the "Improper Allegations").

The Improper Allegations are as follows:

- During that same period Mr. Buchko deftly stanched what had been a pervasive environment of sexual harassment and discrimination fueled in large part by the conduct of the CEO and owner, Robert J. Lewis, a self-described "male chauvinist pig," and which conduct had resulted in no less than seven (7) federal lawsuits by employees, four (4) of which were filed in a two-year period from 2014-2016.

- From and after at least 2016, Mr. Buchko also shepherded Orbital through various crises directly related to the declining capacity of the CEO. By way of example, Lewis always controlled and managed the financial records of Orbital which suffered substantial

>financial losses and corresponding expense related to embezzlement by the company Controller who reported directly to and worked with the CEO. The embezzlement was discovered in 2016.

(Def.'s Answer and Counterclaims ¶¶ 30-31 (ECF 4); Def.'s Mot. for Prelim. Inj. ¶¶ 32, 34 (ECF 7); (Def.'s Brief in Support at 6 (ECF 8).)

### III.   LEGAL ARGUMENT

**A.   This Court Should Grant Orbital's Motion to Strike Pursuant to Rule 12(f) Because Defendant's Allegations of Sexual Harassment and Embezzlement are Immaterial, Impertinent and Scandalous.**

**1.   Legal Standards**

Rule 8(a) of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain":

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

*Id.*

Rule 12(f), in turn, authorizes the Court to strike "from any pleading any. . . redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 407 (W.D. Pa. 2011). Courts can grant a motion to strike where the information at issue poses no relationship to the controversy and "may cause prejudice to one of the parties, or . . . confuse the issues." *Id*. The standard for striking portions of a pleading under Rule 12(f) is strict, and "only

allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken." *Angstrom Indus. Grp., LLC v. Blume Honey Water*, No. 2:18-CV-01210, 2019 WL 316741, at *2 (W.D. Pa. Jan. 24, 2019). "Nonetheless, the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations." 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.)

"Immaterial matter has no essential or important relationship to the claim for relief." *Conklin v. Anthou*, No. 1:10-CV-02501, 2011 WL 1303299, at *1 (M.D. Pa. Apr. 5, 2011); *see also Thomas v. Keystone Real Estate Group LP*, No. 4:14-CV-00543, 2015 WL 1471273, at *7 (M.D. Pa. Mar. 31, 2015) (striking allegations of criminal drug activity in plaintiff's sexual discrimination complaint because none of the claims depended on or even related to such claims and such allegations were prejudicial). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Conklin*, 2011 WL 1303299, at *1. Finally, a "'scandalous' matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Id*. (citation omitted); *see also Bloom v. Shalom*, No. 13–1442, 2014 WL 356624, at **3-4 (W.D. Pa. Jan. 31, 2014).

    **2.**    **Buchko's Allegations Are Immaterial, Impertinent And Scandalous.**

In the Improper Allegations, Buchko (i) refers to Orbital's CEO as a "male chauvinist pig" who "fueled" a "a pervasive environment of sexual harassment and discrimination" that resulted in "no less than seven (7) federal lawsuits by employees, four (4) of which were filed in a two-year period from 2014-2016"; and (ii) claims that the CEO's "declining capacity" caused Orbital to "suffer[] substantial financial losses and corresponding expense related to embezzlement by the company Controller who reported directly to and worked with the CEO."

(*See supra* pp. 3-4.) Under any reasonable reading of Rule 8(a) and Rule 12(f), the aforementioned allegations are wholly irrelevant, improper, scandalous and prejudicial, and they should be stricken.

This lawsuit concerns Orbital's termination of Buchko in March of 2020 on the grounds that he engaged in gross negligence and willful misconduct, Buchko's post-employment contractual obligations not to compete with Orbital, and Buchko's claim for severance compensation pursuant to his employment agreement with Orbital. Buchko's counterclaims allege (i) that Orbital did not have sufficient cause to terminate him for willful misconduct or gross negligence, as those terms are used in the Non-Compete Agreement; (ii) that Orbital purportedly owes certain moneys to Buchko pursuant to the Non-Compete Agreement; and (iii) that the post-employment restrictive covenants in the Non-Compete Agreement are "unenforceable." (*See generally* Countercl. ¶¶ 43-94.)

The Improper Allegations have no bearing on any of Buchko's claims (or defenses) in this case, nor could they possibly be characterized as part of a "short and plain statement of the claim showing that the pleader is entitled to relief" under Rule 8(a). In fact, those allegations on their face pre-date the events at issue in this suit by several years. Worse still, the Improper Allegations serve no purpose other than to try to disparage, embarrass and prejudice Orbital and its CEO (a non-party to this suit). As such, they are immaterial, impertinent and scandalous, and they should be stricken by the Court.

Courts routinely strike allegations of the type asserted by Mr. Buchko here. For instance, in *Bloom v. Shalom*, this Court held that sexual harassment allegations involving other employees "had no connection" to the plaintiff's wage discrimination claims. *See Bloom*, 2014 WL 356624, at **3-4. This Court further noted that the incidents referenced in the plaintiff's

complaint occurred "well outside the time frame relevant to Plaintiff's claims." *Id*. This Court struck the allegations, concluding that plaintiff's sexual harassment allegations "only serve[d] to disparage such persons and appear[ed] to have no proper purpose in this action other than to embarrass such persons." *Id.*

The court reached a similar conclusion in *Thomas v. Keystone Real Estate Group LP*. There, the court found that plaintiff's allegations concerning criminal drug activity at the defendant-company were unrelated to her sexual harassment and hostile work environment claims. 2015 WL 1471273, at *7 ("None of the Plaintiff's claims of discrimination depend or even relate to the existence of the alleged criminal drug activity of [defendant's] employees"). As such, the Court held that those allegations were "immaterial" and "prejudicial" and struck them from the complaint. *Id.*

The circumstances in this case are far more compelling than those in *Bloom* or *Thomas*. Here, there is clearly "no connection"—either substantively or chronologically—between the Improper Allegations and the claims at issue in this case. Allegations of sexual harassment, pejorative descriptions of Orbital's CEO, and references to embezzlement schemes have no connection to the restrictive covenant and breach of contract claims at issue in this case. Moreover, it is readily apparent that these alleged incidents have no temporal connection to Buchko's claims based upon his termination in March 2020. *Bloom*, 2014 WL 356624, at **3-4; *see also, e.g.*, *Magill v. Appalachia Intermediate Unit 08*, 646 F. Supp. 339, 343 (W.D. Pa. 1986) (striking allegations that "reflect adversely on the moral character of an individual who is not a party to this suit" which were "unnecessary to a decision on the matters in question"); *Conklin*, 2011 WL 1303299, at *1 (citations omitted) (striking judicial corruption allegations as scandalous after finding that the allegations did not pertain to the issues in question and

"improperly cast[] a derogatory light" on judicial officers referenced in the allegations). Because the Improper Allegations are not relevant to any elements of Buchko's claims (or defenses) and are otherwise impertinent and scandalous, they should be stricken from the counterclaims.

Lastly, the Improper Allegations are repeated *verbatim* in Buchko's preliminary injunction motion and brief, which were filed on the same day as his initial pleading. (*See* Def.'s Mot. for Prelim. Inj. ¶¶ 32, 34 (ECF 7); Def.'s Brief in Support at 6 (ECF 8).) For the reasons set forth above, the Improper Allegations should be stricken from those filings as well, both under Rule 12(f) as well as the Court's inherent power to control its dockets. *See, e.g.*, *Pigford v. Veneman*, 215 F.R.D. 2, 5 (D.D.C. 2003) (deeming accusations of racism in party's responses to motion "scandalous" and "a form of harassment" and striking those responses); *Nault's Auto. Sales, Inc. v. Am. Honda Motor Co., Acura Auto. Div.*, 148 F.R.D. 25, 35 (D.N.H. 1993) (finding multiple memorandums of law scandalous and striking them in their entirety); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Indeed, as the U.S. Supreme Court explained in *Chambers*, "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id.* The Court's powers in this respect "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citations omitted). Thus, regardless of whether they are evaluated under the rubric of Rule 12(f) or the Court's inherent powers, the Improper Allegations are wholly improper, scandalous and prejudicial, and they should be stricken from Buchko's filings.[1]

---

[1]  A number of courts have observed that "a brief—as opposed to other forms of pleadings—*typically* will not be considered a 'pleading'" for purposes of Rule 12(f). *See, e.g.*,

IV.     **CONCLUSION**

Orbital commenced this action as a result of Buchko's legal threats and his repudiation of his contractual obligations.  In response, Buchko has apparently decided to "raise the stakes" further by leveling irrelevant, derogatory and offensive language towards his former employer and its chief executive.  This Court should reject Buchko's misguided and cynical tactics, which are beneath the dignity of this Court and the judicial process.  Accordingly, Orbital respectfully asks that the Court grant its Motion to Strike Certain Portions of Buchko's Answer, Affirmative Defenses, and Counterclaims; Motion for Preliminary Injunction; and Brief in Support of Motion for Preliminary Injunction.

---

*Prime Energy & Chem., LLC v. Tucker Arensberg, P.C.*, No. 2:18-CV-0345, 2020 WL 32994, at *1 (W.D. Pa. Jan. 2, 2020).  Other courts do not apply such a narrow view to Rule 12(f).  *See, e.g.*, *Pigford v. Veneman*, 215 F.R.D. at 5 (D.D.C. 2003); *Nault's Auto. Sales, Inc.*, 148 F.R.D. at 35.  That distinction is immaterial here, however, because the Court indisputably has the inherent power to strike the Improper Allegations from Buchko's motion and brief, and it should do so for the same reasons that require their removal from Buchko's counterclaims under Rule 12(f).  *See Chambers, Inc.*, 501 U.S. at 43.

                Respectfully Submitted,

                DENTONS COHEN & GRIGSBY P.C.

By: */s/ Fridrikh V. Shrayber*
       Fridrikh V. Shrayber
       Pa. Id. No. 208083
       Julie A. Mueller
       Pa. Id. No. 325657

625 Liberty Avenue, 5th Floor
Pittsburgh, PA  15222-3152
Ph: (412) 297-4900 / Fax: (412) 209-0672
fred.shrayber@dentons.com
julie.mueller@dentons.com

Counsel for Plaintiff,
Orbital Engineering, Inc.

Dated:  June 8, 2020
3359032.v1

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 8th day of June, 2020, the foregoing MEMORANDUM OF LAW IN SUPPORT OF ORBITAL'S MOTION TO STRIKE CERTAIN PORTIONS OF JEFFREY BUCHKO'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS; MOTION FOR PRELIMINARY INJUNCTION; AND BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION was filed with the Court electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

                                                                   */s/ Fridrikh V. Shrayber*