**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ORBITAL ENGINEERING, INC. )<br>                  Plaintiff, )<br>                            )<br>vs                              )<br>                            )<br>JEFFREY J. BUCHKO, )<br>                 Defendant. ) | Civil Action No. 20-593<br><br>Magistrate Judge Dodge |

**MEMORANDUM ORDER**

Plaintiff Orbital Engineering, Inc. ("Orbital") brings this action in which it asserts claims against defendant Jeffrey J. Buchko ("Buchko"), its former Chief Operating Officer, for breach of contract and declaratory relief. Orbital alleges that because Buchko was terminated for gross negligence or willful misconduct, it is not obligated to make certain contractual payments to Buchko that otherwise would be required. It also seeks a declaration that Buchko is bound by the terms of a non-compete agreement with Orbital.

Buchko has asserted counterclaims in which he seeks a declaration that he is not bound by the terms of the non-compete agreement and claims for breach of contract and violation of the Pennsylvania Wage Payment and Collection Law. He previously moved for preliminary injunctive relief, a motion that was ultimately denied.

Presently pending before the Court is Orbital's motion (ECF No. 14) to strike certain language from Buchko's Answer, Affirmative Defenses, and Counterclaims as well as from his Motion for Preliminary Injunction and supporting brief.[1] Orbital's motion has been fully briefed (ECF Nos. 15, 21, 24).

Orbital describes the allegations at issue as (i) a reference to Orbital's Chief Executive

---

[1] Buchko has since filed an Amended Answer, Affirmative Defenses and Counterclaims ("Amended Answer and Counterclaim"). This pleading includes the same language that is the subject of Orbital's motion.

Officer ("CEO") (a non-party in this case) as a "male chauvinist pig" who purportedly "fueled" a "pervasive environment of sexual harassment and discrimination" and "resulted in no less than seven (7) federal lawsuits by employees"; and (ii) an allegation that, as a result of the CEO's "declining capacity," "the financial records of Orbital ... suffered substantial financial losses and corresponding expense related to embezzlement by the company Controller." (Countercl. ¶¶ 30-31 (ECF No. 4). The same language appears in Buchko's motion for preliminary injunction (ECF No. 7 ¶¶ 32, 34) and supporting brief. (ECF No. 8 at 6) and in the Amended Answer and Counterclaim (ECF No. 36 at 6-7).

Rule 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "Immaterial" matter is that which has no essential or important relationship to the claim for relief. *Delaware Health Care Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D. Del. 1995). "Impertinent" matter consists of statements that do not pertain, and are not necessary, to the issues in question. *In re Shannopin Mining Co.*, 2002 WL 31002883, at *28 (W.D. Pa. July 15, 2002). A "scandalous" matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court. *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988). *See Thomas v. Keystone Real Estate Group LP*, 2015 WL 1471273, at *7 (M.D. Pa. Mar. 31, 2015) (striking allegations of criminal drug activity in plaintiff's sexual discrimination complaint because none of the claims depended on or even related to such claims and the allegations were prejudicial).

As noted in *Brkovich v. Dynacom Industries, Inc.*:

> Under Rule 12(f), the standard for striking portions of a complaint "'is strict and ... only allegations that are so unrelated to the plaintiff['s] claims as to be unworthy of any consideration should be stricken.'" *Johnson* v. *Anhorn,* 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (quoting *Becker* v. *Chicago Title Ins. Co.,* Civ. A. No. 03-2292, 2004 U.S. Dist. LEXIS 1988, *18 (E.D. Pa. 2004)). Moreover, striking portions of a plaintiff's pleading is a "drastic remedy[,]"

> which should be used only when justice requires it. *Johnson,* 334 F. Supp. 2d at 809 (quoting *United States* v. *Am. Elec. Power Serv. Corp.,* 218 F. Supp. 2d 931 (S.D. Ohio 2002)) (quotations omitted); *see also Dela Cruz* v. *Piccari Press,* 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (providing that while "motions to strike may save time and resources by making it unnecessary to litigate claims that will not affect the outcome of the case, motions to strike generally are disfavored"). Motions to strike are decided on the pleadings alone. *Dela Cruz,* 521 F. Supp. 2d at 429 (citing *North Penn Transfer, Inc.* v. *Victaulic Co. of Am.,* 859 F. Supp. 154, 159 (E.D. Pa. 1994)).

2011 WL 7052128, at *1 (W.D. Pa. Nov. 10, 2011).

Orbital argues that the allegations at issue have absolutely no bearing on the issues involved in this lawsuit. Not only do they relate to events in 2014 to 2016, years before Buchko's termination in March 2020, but they also have no connection to the reasons for his termination. Rather, Orbital asserts, these allegations have been made solely for the purpose of denigrating Orbital and its CEO, the latter of whom is not a party to this lawsuit.

Orbital cites *Bloom v. Congregation Beth Shalom*, 2014 WL 356624 (W.D. Pa. Jan. 31, 2014) in support of its position. In *Bloom,* Judge Cohill struck sexual harassment allegations involving other employees, finding that they "had no connection" to the plaintiff's wage discrimination claims and that the incidents referenced in the complaint occurred "well outside the time frame relevant to Plaintiff's claims." *Id* at *4. The court found that the plaintiff's sexual harassment allegations "only serve[d] to disparage such persons and appear[ed] to have no proper purpose in this action other than to embarrass such persons." *Id.* In turn, Buchko argues that *Bloom* is not applicable here because the claims for relief in that case only related to discrimination that stemmed from an imbalance of wages, not pervasive harassment.

Buchko argues that the allegations in dispute are appropriate because they directly relate to Orbital's view as to what represents willful misconduct in the workplace. He also asserts that they are relevant to the evaluation of Mr. Buchko's activities and performance and are already in

3

the public domain.

The fact that some of Buchko's allegations are in the public domain because various lawsuits have been filed does not make these allegations relevant to this case. At the same time, however, Orbital's Complaint alleges, without any specificity, that Buchko engaged in willful misconduct that precipitated his termination. Paragraph 14 of the Complaint simply sets forth a laundry list of conduct which Orbital defines in its Employee Handbook as willful misconduct, including but not limited to sexual harassment, embezzlement of funds, theft and insubordination. While there may be entirely appropriate reasons that Orbital declined to specify the precise nature of Buchko's conduct in its Complaint, nonetheless, as of this stage of the proceedings, it would not be unreasonable to draw the conclusion that Buchko may have engaged in any of the willful misconduct listed in the Complaint. Therefore, the allegations regarding the environment within Orbital, his efforts to handle crises, and the conduct that was tolerated, or not, at the upper management level could be relevant both to an evaluation of Buchko's performance and whether his management of various issues could have impacted the decision to terminate his employment. Moreover, whether these events are too remote in time to be relevant to the issues in this case cannot be determined based solely on the pleadings.

Therefore, the Court declines to strike the allegations at issue in their entirety. However, it concludes that certain language in Buchko's Answer and Counterclaims and Amended Answer and Counterclaims are impertinent or unnecessarily makes derogatory allegations and therefore should be stricken. Specifically, references that label the CEO as a "male chauvinist pig" with a "declining capacity" have no legitimate place in Buchko's pleadings.

Therefore, Orbital's motion to strike will be granted in part. With respect to Paragraph 30, the following language will be stricken: "fueled in large part by the conduct of the CEO and owner,

Robert J. Lewis, a self-described 'male chauvinist pig,' and which conduct had resulted in no less than seven (7) federal lawsuits by employees, four (4) of which were filed in a two-year period from 2014-2016." With respect to Paragraph 31, the following language will be stricken: "directly related to the declining capacity of the CEO. By way of example, Lewis always controlled and managed the financial records of Orbital which suffered substantial financial losses and corresponding expense related to embezzlement by the company Controller who reported directly to and worked with the CEO. The embezzlement was discovered in 2016."

Therefore, it is hereby ORDERED that said language is stricken from Buchko's Answer and Counterclaims (ECF No. 4 ¶¶ 30-31), and from his Amended Answer and Counterclaims (ECF No. 36 at 6).[2]

BY THE COURT:

s/Patricia L. Dodge
Patricia L. Dodge
United States Magistrate Judge

Dated: September 22, 2020

---

[2] As noted above, the motion also requested that this language be stricken from the motion for preliminary injunction and brief in support, but the motion has since been denied.