IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ORBITAL ENGINEERING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | Civil Action No. 20-593 |
| ) | |
| ) | Magistrate Judge Dodge |
| JEFFREY J. BUCHKO, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Orbital Engineering, Inc. ("Orbital") has moved to exclude the testimony of David B. Thaw, J.D., Ph. D. ("Dr. Thaw") (ECF No. 272), an expert retained by Defendant Jeffrey J. Buchko ("Buchko"), Orbital's former Chief Operating Officer ("COO"). In moving to exclude Dr. Thaw, Orbital relies upon the principles outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For the reasons that follow, Orbital's motion will be granted in part and denied in part.

I. Standard of Review

Rule 702 of the Federal Rules of Evidence sets forth the standards for admissible expert testimony. As explained by the Third Circuit Court of Appeals:

> "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, i.e., reliability]; and (3) the expert's testimony must assist the trier of fact[, i.e., fit]." "Under the Federal Rules of Evidence, a trial judge acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." Before the proposed testimony gets presented to the jury, the trial judge evaluates its admissibility based on these three requirements.

*United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243-44 (3d Cir. 2008)).

"District courts perform a gatekeeping function to ensure that expert testimony meets the requirements of Federal Rule of Evidence 702." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017). "As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591).

The Third Circuit has derived from *Daubert* the following non-exclusive factors for determining reliability:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Elcock v. Kmart Corp.*, 233 F.3d 734, 745-46 (3d Cir. 2000) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994)). This analysis applies to all expert testimony, not just scientific testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

As the Court of Appeals explained in *Schiff*, an expert's testimony must also "fit" the facts of the case:

> It is typically understood in terms of whether there is a sufficient "fit" between the expert's testimony and the facts that the jury is being asked to consider. *Daubert*, 509 U.S. at 591. In assessing whether an expert's proposed testimony "fits," we are asking " 'whether [the] expert testimony proffered ... is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Id.* (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). Put another way, this is a question of relevance, and "Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility" if it has the "potential for

> assisting the trier of fact." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 780 (3d Cir. 1996)); *see also In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999) ("expert evidence which does not relate to an issue in the case is not helpful"). The "standard is not that high," but "is higher than bare relevance." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).

602 F.3d at 172-73.

In making its determination about the admissibility of expert testimony, the court should apply Rule 702's requirements liberally, *Pineda*, 520 F.3d at 244, and should uphold the general framework of the Federal Rules of Evidence which favors the admissibility of evidence over non-admissibility. *Daubert*, 509 U.S. at 588; *see also Pineda*, 520 F.3d at 243 ("The Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact.") "The inquiry envisioned by Rule 702 is . . . a flexible one . . . [directed at] the scientific validity—and thus the evidentiary relevance and reliability—of . . . the proposed submission." *Daubert*, 509 U.S. at 594–95.

II. Discussion

In moving to exclude Dr. Thaw as an expert witness, Orbital asserts that the two principal issues regarding the admissibility of his testimony are: (1) if he can opine about whether Buchko's conduct constitutes "willful misconduct" or "gross negligence" based on definitions of these terms provided him by Buchko's counsel; and (2) if he should be precluded from offering his own alternative definitions of "willful misconduct" and "gross negligence" and then opining on whether Buchko's conduct satisfies those definitions.[1] Orbital asserts that both of these proffered opinions are improper legal conclusions and must be excluded.

Orbital further contends that Dr. Thaw's opinions should be excluded because: (1) Dr.

---

[1] Orbital does not challenge Dr. Thaw's qualifications.

3

Thaw's opinions regarding Buchko's alleged "willful misconduct" or "gross negligence" are premised on Dr. Thaw's assessment of Buchko's state of mind; (2) Dr. Thaw's definitions of "willful misconduct" and "gross negligence" are not based on any discernible methodology, basis or rationale; and (3) Dr. Thaw's opinion that Buchko was not responsible for Orbital's IT is contradicted by the record in this case. Orbital also seeks to exclude Dr. Thaw's rebuttal of Orbital's expert because it is based on these improper and unreliable opinions. Thus, Orbital argues, Dr. Thaw's testimony should be excluded in its entirety.

As the record reflects, Buchko signed a confidentiality and non-compete agreement ("NCA") with Orbital that states, in relevant part, that he would not work for a competitor for two years after the termination of his employment, whether it was voluntary or involuntary. The non-compete restriction was reduced to one year if Buchko's employment was terminated for anything other than willful misconduct "as described in [Orbital's] handbook." The NCA also provides that Buchko is entitled to certain compensation "if terminated, unless for gross negligence or intentional or willful misconduct."[2]

Orbital's employee handbook provides "examples of willful misconduct" that are prohibited when the employee represents the company. The handbook lists twenty-three such examples. Orbital informed Buchko on March 3, 2020 that he was being terminated for "willful misconduct" without specifying any of the examples in the handbook. At times during this litigation, Orbital has cited various examples as the bases for its decision, including: negligent use of and/or intentional damage to company property including falsifying, destroying or concealing company records; failure to adhere to safety/security regulations and procedures; failure to maintain the confidentiality of company information or business records; refusal to follow

---

[2] The term "gross negligence" is not defined in Orbital's employee handbook.

management's directions or instructions concerning any job-related function; and insubordination. (ECF No. 226 Ex. 31, § 1.7.)

Thaw's opinion does not utilize these or other examples of willful misconduct that are set forth in Orbital's handbook. Instead, he relies upon a definition provided to him by Buchko's counsel and alternatively, his own definition. *See* Thaw Report at 5 (willful misconduct requires "some clear evidence of the actor's malice, other intent to cause harm, or intentional disregard of a clearly-established duty.") (ECF No. 273 Ex. 1.) He defines gross negligence in a similar way. He then applies these definitions in order to render opinions regarding Buchko's conduct.

Dr. Thaw's opinions about what constitutes willful misconduct and gross negligence do not fit the facts of this case. As the Court determined in a prior opinion, the parties agreed in the NCA that the definition of willful misconduct is stated the employee handbook. Dr. Thaw's use of either the definition provided by counsel or his own definition, neither of which is from the handbook, is not tied to the facts of the case nor will it aid the jury in resolving any factual dispute. Simply put, these definitions are not relevant to resolution of the issue of whether Buchko engaged in willful misconduct. His definition of gross negligence, a legal term, is similarly irrelevant. Thus, Dr. Thaw will not be permitted to testify as to the meaning of the terms "willful misconduct" or "gross negligence" in the IT industry or the area of cybersecurity, nor can he testify that Buchko's actions did not represent willful misconduct or gross negligence.

Even if Dr. Thaw could employ these definitions, he cannot opine on an ultimate legal issue. Throughout his report, he renders opinions that Buchko did not engage in gross negligence or willful misconduct. However, an expert witness cannot testify as to a legal standard or whether a party's conduct meets the standard. *See Wolfe v. McNeil-PPC, Inc.*, 2011 WL 1673805, at *8 (E.D. Pa. May 4, 2011) (expert testimony that a party was negligent was an improper legal

5

opinion). As the Third Circuit has held, a district court:

> must ensure that an expert does not testify as to the governing law of the case. Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that "embraces an ultimate issue to be decided by the trier of fact," an expert witness is prohibited from rendering a legal opinion. *United States v. Leo*, 941 F.2d 181, 195-96 (3d Cir. 1991). Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury. *First National State Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (per curiam).

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (footnote omitted). *See also Brown Advisory Sec., LLC v. Trapani*, 2016 WL 5661730, at *2 (W.D. Pa. Sept. 30, 2016) ("It is axiomatic that questions of law are not proper subjects of expert testimony"). "This prohibition extends to expert testimony on the construction of a contract and application of that construction to the claim." *Brown,* 2016 WL 5661730, at *2. *See also Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.,* 410 F. Supp. 2d 417, 421 (W.D. Pa. 2006). Thus, Dr. Thaw is precluded from rendering opinions about the meaning of willful misconduct or gross negligence as well as whether Buchko's conduct rose to the level of willful misconduct or gross negligence.[3]

Similarly, to the extent that Dr. Thaw's opinions are based on his conclusions about Buchko's state of mind in carrying out his duties as COO, they must also be excluded. Various courts have held that "intent is not a proper subject for expert testimony" because it is "a classic jury question." *Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 648 (E.D. Pa. 2004) (citing *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000)). As noted by Judge Ambrose: "An expert simply is not in any better position than the jury to assess another's subjective intent." *Gallatin Fuels, Inc.*,

---

[3] Notably, Dr. Thaw's report notes that these terms are not generally used or defined in the field of IT or cybersecurity.

410 F. Supp. 2d at 423.[4]

At the same time, there are some aspects of Dr. Thaw's report that represent appropriate expert conclusions and are admissible. Dr. Thaw may testify about industry standards, or the lack thereof, in the field of cybersecurity. (Thaw Report at 6-10.) *See Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 2012 WL 12929814, at *3 (M.D. Pa. July 23, 2012) (expert could testify as to insurance industry practices, but not issue of whether carrier had acted in bad faith). However, any such testimony may not venture into the meaning of willful misconduct or gross negligence in the cybersecurity field or the application of those terms to Buchko's conduct.

Moreover, Dr. Thaw may testify about the differences between substantive and administrative supervision in cybersecurity both generally and as it applies to the facts of this case. (Thaw Report at 12-14.) While Orbital contends that Dr. Thaw's opinions regarding Buchko's role and responsibilities should be excluded because they are based on unreliable facts, it is evident that the parties dispute Buchko's level of responsibility for IT and cybersecurity at Orbital. Buchko contends that he was an executive with only administrative oversight of IT issues, while Orbital asserts that his responsibilities were more extensive. Dr. Thaw may properly base his conclusions on his discussions with Buchko. "An expert is. . . permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury." *Walker v. Gordon*, 46 F. App'x 691, 695-96 (3d Cir. 2002). In turn, Orbital may cross examine Dr. Thaw regarding the facts on which his opinions are based.[5]

---

[4] Dr. Thaw's understanding of Buchko's role and responsibilities is based, at least in part, on discussions with Buchko and therefore represents facts, albeit disputed, on which he can base his opinions. By contrast, his opinions about matters such as whether Buchko intentionally disregarded or deliberately violated Orbital's rules and standards are not admissible, as discussed herein.

[5] Dr. Thaw also states that even assuming that Buchko had *some* substantive oversight of Orbital's IT Department, he is not aware of any evidence suggesting that Buchko had a duty to personally

Finally, Orbital asserts that Dr. Thaw's rebuttal of the opinions of D. Justin Price, Orbital's expert, is inadmissible because these opinions represent legal opinions and are unreliable. To the extent that Dr. Thaw's rebuttal is based on whether Buchko's actions constitute willful misconduct or gross negligence, or otherwise relate to Buchko's state of mind, the Court agrees that these opinions are inadmissible for the reasons previously discussed.

However, the Court concludes that Dr. Thaw's opinions that Mr. Price misconstrued Buchko's role as COO,[6] and that Buchko's level of familiarity with cybersecurity matters is not informative of whether he disregarded a clearly established duty to Orbital, are admissible. Again, any such testimony shall not discuss the concepts of gross negligence or willful misconduct.

Therefore, this 5th day of January, 2022, it is ORDERED as follows:

1. Dr. Thaw may provide testimony and opinions on the following matters:

    a. Industry standards, or the lack thereof, in the field of cybersecurity.

    b. The differences between substantive and administrative supervision in cybersecurity both generally and as it applies to the facts of this case.

    c. Testimony related to questions 1.2 and 3.2 in his report (Thaw Report at 2).

    d. Rebuttal testimony regarding whether Mr. Price misconstrued Buchko's role as COO, and as such, whether Buchko's level of familiarity with cybersecurity matters is informative of whether Buchko disregarded a duty to Orbital.

2. Dr. Thaw is precluded from offering any testimony or expert opinions regarding the meaning of willful misconduct or gross negligence or whether Buchko's conduct represented willful misconduct or gross negligence. This includes all testimony related to questions 1.1, 1.3, 2, 2.1, 3 and 3.1 (other than as stated in 1d. above) as set forth in his report (Thaw Report at 2). Further, he may not opine regarding legal issues or Buchko's state of mind.

---

implement a cybersecurity program or otherwise interfere with Scott Winkler's recommendations in the latter's role as Director of IT. (Thaw Report at 21; *see also id.* at 25.)

[6] At the same time, as discussed in the opinion regarding the admissibility of Mr. Price's opinion, opinions regarding the role of a COO generally are not relevant and do not fit the facts of this case. The relevant inquiry is what Buchko was tasked to do by Orbital and whether he fulfilled these duties.

BY THE COURT:

s/Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge