IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ORBITAL ENGINEERING, INC.       )
           Plaintiff,           )
                              )
vs                          )       Civil Action No. 20-593
                              )
JEFFREY J. BUCHKO,             )       Magistrate Judge Dodge
           Defendant.       )

## MEMORANDUM ORDER

Plaintiff Orbital Engineering, Inc. ("Orbital") and Defendant Jeffrey J. Buchko ("Buchko") have filed cross-motions (ECF Nos. 392, 400) to enforce a settlement reached in the above-captioned case. For the reasons that follow, Buchko's motion will be granted and Orbital's motion will be denied.

### I.    Relevant Background

On February 10, 2022, the parties notified the Court that the case had settled in principle. The Court was later advised that a disagreement had arisen over certain language in the written settlement agreement. However, on February 23, 2022, the parties notified the Court that all issues had been resolved. As such, an order of administrative closure was entered, which stated in part that "the Court expressly retains jurisdiction in this matter to consider any issue that may arise during the period when settlement is being finalized, including, but not limited to, enforcing settlement." (ECF No. 388.)

Issues again arose between the parties. On February 28, 2022, a telephone conference was scheduled at the request of the parties to discuss the status of the parties' disagreement. The Court informed the parties that if they took the position that an enforceable settlement had been reached, either or both parties could move to enforce the settlement.

A motion to enforce settlement was filed by Buchko on March 2, 2022 (ECF No. 392). On March 11, 2022, Orbital filed a response in opposition (ECF No. 399) as well as a cross-motion to enforce the settlement (ECF No. 400). Buchko has filed a brief in opposition to Orbital's motion (ECF No. 403), and therefore, this dispute has been fully briefed.

## II. Nature of the Dispute

Notably, both parties take the position that they reached a final settlement and both are moving to enforce the written Settlement Agreement that was negotiated and then sent by Orbital to Buchko for signature. They disagree, however, on the meaning of certain terms as they relate to payments and obligations associated with the issuance of a W-2 to Buchko.

While the parties disagree about the meaning of certain terms in the Settlement Agreement, certain facts are not in dispute. On February 23, 2022, counsel for Orbital sent a "final draft of the settlement agreement" to Buchko's counsel and indicated that Orbital would execute the agreement subject to Buchko's confirmation. Buchko signed the agreement on February 24, 2022, and his counsel returned the signed agreement to counsel for Orbital. On Friday, February 25, 2022, counsel for Buchko sent an email to Orbital's counsel inquiring about when the agreement would be executed by Orbital. Its counsel responded that he "anticipates having a signature on Monday, after [the client representative] returns."

Later that day, counsel for Orbital indicated in an email to Buchko's counsel that Orbital sought to confirm the "net amount" Buchko would be receiving with respect to the W2 payment that was part of the settlement. Orbital took the position that in addition to other deductions (that are not disputed), the gross amount of the W2 payment to Buchko would be reduced by the employer's (i.e., Orbital's) federal tax obligations related to Medicare and FICA. Orbital advised Buchko that this was consistent with the understanding that the parties reached regarding Section

2.0(i) of the Settlement Agreement.  Buchko disagreed that any such understanding existed and asserted that Orbital is responsible for the employer portion of these taxes. The parties' motions to enforce followed.

The Court has been provided with a copy of the confidential Settlement Agreement (ECF No. 396 Ex. B).[1] Section 2.0 of the Settlement Agreement states, in relevant part, as follows:

> 2.0 **Consideration.** In return for the valuable consideration recited herein, including specifically the release set forth in Section 3, Orbital Engineering, Inc. agrees to issue payments…within 30 days after the Effective Date and paid as follows:
>
> (i)    $[ ][2] shall be allocated to Jeffrey J. Buchko as W2 wages and shall be subject to all tax deductions and withholdings applicable to W2 employees and for which a form W2 will be issued to Jeffrey J. Buchko.

******

(ECF No. 392 Ex. B, § 2.0(i).) As a material term of the settlement, Orbital was required to issue a W2 to Buchko. Agreement §§ 15.0, 16.0.  Further, Section 17 of the Settlement Agreement states:

> 17.0 **Tax Obligations.** The parties have negotiated, at arms' length and in good faith, the allocation between and tax treatment of the settlement payments and attorneys' fees outlined in this agreement with due consideration to the claims asserted by each. Each party shall remain solely obligated for the tax reporting requirements and liabilities associated with the payments made pursuant to this Agreement.

The Settlement Agreement also includes an integration clause, which provides as follows:

> 10.0 **Entire Agreement and Successors in Interest.** This Agreement contains the entire agreement between the Parties with regard to the matters set forth in it and shall be binding upon and inure to the benefit of the successor entities, parent companies, subsidiaries and as to individuals their executors, administrators, personal representatives, heirs, beneficiaries, successors and assigns of each.

---

[1] The Settlement Agreement is filed under seal and includes a confidentiality clause. Nonetheless, the parties have been advised that certain relevant portions of the agreement must be identified and discussed in this opinion in order to explain the parties' positions and the Court's analysis.

[2] The amount of this payment is not relevant to the resolution of this dispute and therefore is not referenced.

(ECF No. 392 Ex. B § 10.0).

What is now at issue between the parties are the tax consequences of Section 2.0(i). Buchko contends that, as written, Orbital is responsible for payment of the employer's share of taxes on the amount to be paid subject to a W2, specifically FICA and Medicare taxes, which are neither a tax deduction nor withholding. See 26 U.S.C. § 3111. He asserts that Orbital's construction is inconsistent with the plain language of the Settlement Agreement.

Orbital's position is that it agreed to pay a certain amount in settlement of the case and no more and Buchko knew that this was a material term of the agreement. Further, Orbital argues that the parties agreed that to the extent that designating certain sums as W2 "wages" would result in tax consequences, Buchko would bear all of the associated costs and Orbital would reduce the amount of its payment to him accordingly. That is, Orbital contends that it agreed to pay Buchko the amount stated in Section 2.0(i) of the Settlement Agreement minus *all* tax deductions and withholdings, including the tax liability that Orbital would otherwise incur.[3]

## III.   Analysis

"It is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein." *Fox v. Consol. Rail Corp.*, 739 F.2d 929, 932 (3d Cir. 1984) (citation omitted). Moreover, "an agreement to settle a lawsuit, voluntarily entered into is binding upon the parties, whether or not made in the presence of the Court, and even in the absence of a writing." *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970). Thus, the fact that Orbital—which sent the final version of the Settlement Agreement to Buchko for his signature—has not signed the agreement does not impact its

---

[3] Orbital's description of the amounts at issue indicates that it is also excluding a small amount of Indiana state unemployment tax. Buchko does not appear to object to this deduction or other deductions identified by Orbital.

enforceability.

"The enforceability of settlement agreements is governed by principles of contract law." *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999). Moreover, "the interpretation of a contract is ordinarily a matter of state law." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 47 (2015). Thus, Pennsylvania law applies to the interpretation of the Settlement Agreement. *See Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017). In addition, Section 14.0 of the Settlement Agreement specifically provides that it shall be construed and interpreted in accordance with Pennsylvania law.

Courts determine as a matter of law whether a contract is ambiguous. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 613 (3d Cir. 1995). However, "a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction." *Id.* at 614 (citation omitted).

Both Buchko and Orbital seek to enforce the Settlement Agreement and neither party argues that it is ambiguous. Buchko contends Orbital's separate obligation to pay the company's portion of payroll taxes was not transferred to him by the plain and unambiguous meaning of any term in the agreement. He notes that the Settlement Agreement does not contain any provision that requires him to pay Orbital's employer portion of the required taxes on the amount designated as wages in Section 2.0(i). According to Buchko, the company portion of payroll tax is not a "tax deduction" from the employee's paycheck and is not otherwise a "withholding" from the employee's paycheck. Rather, it is a separate and independent payment owed by an employer to the federal government apart from the employee tax deductions and withholdings. It does not come out of the employee's paycheck, whether by tax deduction, withdrawal, or any other means. See 26 U.S.C. § 3111(a) (employers owe an excise tax of 6.2 percent of wages for "old age, survivors

and disability insurance"), § 3111(b) (employers owe an excise tax of 1.45 percent of wages for "hospital insurance").

By contrast, Orbital contends that Section 17.0 of the Settlement Agreement (which states that each party is responsible for its own tax liabilities) is "modified" by Section 2.0(i), which states that the amount designated as W2 wages "shall be subject to all tax deductions and withholdings applicable to W2 employees." That is, Orbital interprets Section 2.0(i) to mean that Buchko must pay *all* tax deductions and withholdings, including the employer's payments. Orbital argues that Buchko's reading—that each party would bear its own tax responsibilities—renders the language in Section 2.0(i) meaningless and superfluous, as it is already addressed in Section 17.0. *See Sloan & Co. v. Liberty Mut. Ins. Co.*, 653 F.3d 175, 181 (3d Cir. 2011) ("courts should not interpret contracts in a way that render[s] at least one clause superfluous or meaningless.").

While Orbital does not contend that Section 2.0(i) is ambiguous, it argues that Buchko's position is "premised solely on the language of the Settlement Agreement." Orbital contends that the history of negotiations between the parties demonstrates that pursuant to Section 2.0(i), Buchko agreed to pay all taxes owed by either party.

In turn, Buchko argues that consideration of the history of the negotiations is barred by the parol evidence rule. The Pennsylvania Supreme Court has explained the parol evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract ... and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (citation omitted).  Buchko

6

also notes that both parties took a number of positions during the negotiations that ultimately were not included in the final Settlement Agreement and both parties undertook an independent evaluation of their tax obligations, which contributed to the final language of the agreement. Therefore, he contends that the unambiguous language of the agreement is controlling.

In support of its position, Orbital quotes from *Sunbury Textile Mills, Inc. v. Comm'r of Internal Rev.*, 585 F.2d 1190, 1195 (3d Cir. 1978):

> The court will give legal effect to the words of a contract in accordance with the meaning actually given to them by one of the parties, if the other knew or had reason to know that he did so. In determining the meaning so given by the one and the fact of knowledge or reason to know by the other, the court will hear all relevant evidence of the surrounding circumstances, including the admissions of the parties, the negotiations and antecedent communications between them, and all current usages that might have affected their choice of the words.

Thus, it argues, the Court may properly consider the parties' communications and negotiations that preceded the completion of the final version of the Settlement Agreement regarding the meaning of Section 2.0(i). Buchko counters that while an exception to the parol evidence rule was applied in *Sunbury*, it is distinguishable because the parties in that case agreed as to the meaning of an *ambiguous* contractual term and the evidence was offered as part of a dispute between one of the parties and the tax court as to its meaning.

The Court agrees that the *Sunbury* case is distinguishable. And as noted, Orbital does not contend that any of the terms of the Settlement Agreement are ambiguous. Moreover, the Settlement Agreement includes an integration clause that provides, in part, that the agreement "contains the entire agreement between the Parties." "An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." *Yocca*, 854 A.2d at 436. Further, in the absence of fraud

or mistake, preliminary negotiations are merged into and superseded by the subsequent written agreement and cannot be considered. Thus, parol evidence cannot be considered and the express language of the Settlement Agreement controls the resolution of the parties' dispute.

The Court rejects Orbital's interpretation of the Settlement Agreement. Notably, Section 17.0 of the agreement provides that each party shall remain "solely obligated for the tax reporting requirements and liabilities associated with the payments made pursuant to this Agreement." Orbital's suggestion that including the word "all" in the relevant portion of Section 2.0(i) modifies this provision is unpersuasive. Section 2.0(i) states that the amount to be paid as W2 wages shall be subject to "all tax deductions and withholdings applicable to W2 employees." This cannot be interpreted to mean that the parties agreed that Orbital's tax obligations are Buchko's responsibility. Orbital's responsibility to pay employer taxes on wages issued to Buchko is not a "tax deduction" or "withholding" that is applicable to W2 *employees*.

On its face, the Settlement Agreement unambiguously provides that Orbital agreed to pay a certain sum to Buchko that is designated as W2 wages. By statute, an employer's portion of Medicare and Social Security tax is paid by the employer; it is not a "tax deduction" or "withholding" that is paid by W2 employees. By agreeing to issue a W2 payment, Orbital would incur the employer's tax liability for FICA and Medicare unless the parties agreed otherwise. The unambiguous terms of the Settlement Agreement do not include any such agreement. While the Court does not question Orbital's representations about what was discussed during negotiations that preceded the final terms of settlement, there simply is no provision in the Settlement Agreement by which Buchko agreed that the net W2 payment he received will be reduced by Orbital's employer tax obligations.

The plain meaning of the relevant portions of the Settlement Agreement is that each party would pay its own tax obligations (§ 17.0) and that Orbital's payment of W2 wages to Buchko will be reduced by the amount Buchko owes in taxes, but not by the amount that Orbital owes in taxes pursuant to 26 U.S.C. § 3111. Thus, the payment of the employer's share of deductions from Buchko's W2 settlement check are Orbital's responsibility.

## IV.    Buchko's Motion for Counsel Fees

Buchko contends that Orbital has not acted in good faith and requests counsel fees incurred to enforce the Settlement Agreement. *See Ford v. Temple Hosp.*, 790 F.2d 342, 346 (3d Cir. 1986) (courts may award counsel fees to a successful party "when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") The Court concludes that Orbital took a good-faith position regarding this dispute and as such, Buchko is not entitled to counsel fees associated with enforcing the Settlement Agreement.

Therefore, this 8th day of April 2022, it is hereby ORDERED that the motion to enforce settlement of Jeffrey J. Buchko (ECF No. 392) is GRANTED and the motion to enforce settlement of Orbital Engineering, Inc. (ECF No. 400) is DENIED.  It is further ORDERED that Buchko's motion for counsel fees is DENIED.


BY THE COURT:


/s/Patricia L. Dodge
Patricia L. Dodge
United States Magistrate Judge